IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVE KRUEGER,<br><br>    Plaintiff,<br><br>v.<br><br>PROGENICS PHARMACEUTICALS, INC., ERIC J. ENDE, BRADLEY L. CAMPBELL, DAVID W. MIMS, KAREN JEAN FERRANTE, ANN L. MACDOUGALL, GÉRARD BER and HEINZ MÄUSLI,<br><br>    Defendants. | CASE NO.:<br><br>COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS |

Plaintiff Dave Krueger ("Plaintiff"), by his undersigned attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

**NATURE AND SUMMARY OF THE ACTION**

1. Plaintiff, a stockholder of Progenics Pharmaceuticals, Inc. ("Progenics" or the "Company") brings this action against the members of Progenics' Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) & 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, and 17 C.F.R. § 240.14a-9, arising out of their attempt to merge the Company with Lantheus Holdings, Inc. ("Lantheus").

2. On October 1, 2019, the Company announced that it had entered into a definitive agreement and plan of merger (the "Original Merger Agreement"), by which the Company would merge with Lantheus and Progenics stockholders would receive 0.2502 shares of Lantheus common stock for each share of Progenics common stock.

3. After an activist investor won its proxy battle with the Progenics board that approved the Original Merger Agreement, the newly-formed Board caused Progenics to renegotiate the Original Merger Agreement. On February 20, 2020, the Company announced an amended agreement and plan of merger (the "Merger Agreement"), pursuant to which the Company will still merge with Lantheus, but with Progenics stockholders receiving 0.31 shares of Lantheus common stock for each share of Progenics common stock (the "Proposed Transaction"). Progenics stockholders would also receive a contingent value right entitling the holder to a pro rata share of aggregate cash payments for 40% of the U.S. net sales generated by the Company's PyLTM product in excess of $100 million in calendar year 2022 and $150 million in calendar year 2023 (the "Merger Consideration").

4. After initially filing a Form S-4 Registration Statement with respect to the Original Merger Agreement on November 4, 2019, the Board authorized the filing of a materially incomplete and misleading Amended Registration Agreement on Form S-4/A on March 16, 2020 (the "Registration Statement").

5. The Company filed a Schedule 14A Definitive Proxy Statement (the "Proxy") on March 19, 2020 that contained the same materially incomplete and misleading information. On April 2, 2020, the Company filed a form 8-K that rescheduled the stockholder vote from April 28, 2020 to June 16, 2020 (the "Stockholder Vote").

6. The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding: (i) the financial projections for the Company that were prepared by Company management and relied upon by Defendants in recommending that Progenics stockholders vote in favor of the Proposed Transaction; and (ii) certain valuation analyses performed by the Company's financial advisor, BofA Securities Inc. ("BofA") in support

of its opinion that the Merger Consideration is fair to shareholders, on which the Board relied in approving the Merger Agreement.

7. Without additional information the Proxy is materially misleading in violation of the federal securities laws.

8. By unanimously approving the Proposed Transaction and authorizing the issuance of the Registration Statement and the Proxy, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Proxy was materially false and/or misleading. The Proxy is an essential link in accomplishing, and receiving stockholder approval for, the Proposed Transaction.

9. Under the Merger Agreement, following a successful Stockholder Vote, the Proposed Transaction will be consummated.

10. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants (collectively identified below) from conducting the Stockholder Vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of Progenics common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

12. Personal jurisdiction exists over each Defendant either because each has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

13. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) Progenics maintains its principal executive offices in this District; (ii) the conduct at issue had an effect in this District, as the Company's common stock is listed and traded on the NASDAQ within this District; and (iii) Defendants have received substantial compensation in this District by accessing the capital markets active in this District.

## PARTIES AND RELEVANT NON-PARTIES

14. Plaintiff is, and has been at all relevant times, the owner of Progenics common stock.

15. Defendant Progenics is a Delaware corporation with principal executive offices at One World Trade Center, 47th Floor, Suite J, New York, New York 10007. Progenics is an oncology company that focuses on the development of targeted medicines and artificial intelligence to find, fight and follow cancer. Progenics common stock is listed for trading on the NASDAQ Capital Market under the ticker symbol "PGNX."

16. Defendant Gérard Ber has served as a director of the Company since November 2019.

17. Defendant Bradley L. Campbell has served as a director of the Company since 2016.

18. Defendant Eric J. Ende has served as a director of the Company since November 2019.

19. Defendant Karen Jean Ferrante has served as a director of the Company since January 2014.

4

20. Defendant Heinz Mäusli has served as a director of the Company since November 2019.

21. Defendant Ann MacDougall has served as a director of the Company since November 2019.

22. Defendant David W. Mims has served as a director of the Company since November 2019.

23. Defendants referenced in ¶¶ 16 through 22 are collectively referred to as Individual Defendants and/or the Board.

## FURTHER SUBSTANTIVE ALLEGATIONS

24. Progenics is in the business of developing and commercializing therapeutic agents designed to treat cancer (AZEDRA®, 1095, and PSMA TTC); prostate-specific membrane antigen ("PSMA") targeted imaging agents for prostate cancer (PyL™ and 1404); and imaging analysis technology (aBSI and PSMA AI). Progenics has three commercial products: AZEDRA, for the treatment of patients with unresectable, locally advanced or metastatic pheochromocytoma or paraganglioma (rare neuroendocrine tumors of neural crest origin) who require systemic anticancer therapy; and oral and subcutaneous formulations of RELISTOR® (methylnaltrexone bromide) for the treatment of opioid-induced constipation, which are partnered with Bausch Health Companies Inc.

25. On February 20, 2020, the Company issued a press release announcing the Amended Merger Agreement and Proposed Transaction. The Press Release read in relevant part:

> NORTH BILLERICA, Mass. & NEW YORK--(BUSINESS WIRE)--Feb. 20, 2020-- Lantheus Holdings, Inc. (NASDAQ: LNTH) ("Lantheus"), parent company of Lantheus Medical Imaging, Inc. ("LMI"), a leader in the development, manufacture and commercialization of innovative diagnostic imaging agents and products, and Progenics Pharmaceuticals, Inc. (NASDAQ: PGNX) ("Progenics"), an oncology company developing innovative medicines

5

and artificial intelligence to find, fight and follow cancer, today announced that they have entered into an Amended and Restated Agreement and Plan of Merger (the "Amended Agreement") which amends the previously announced definitive Agreement and Plan of Merger dated as of October 1, 2019 (the "Original Agreement"). The Amended Agreement has been unanimously approved by the Boards of Directors of both companies.

Under the terms of the Amended Agreement, Lantheus will acquire all of the issued and outstanding shares of Progenics common stock at a fixed exchange ratio whereby Progenics stockholders will receive, for each share of Progenics stock held at the time of the closing of the merger, 0.31 of a share of Lantheus common stock, increased from 0.2502 under the Original Agreement, together with a non-tradeable contingent value right ("CVR"). The CVR is payable in two separate cash payments if PyLTM (18F-DCFPyL), Progenics' prostate-specific membrane antigen targeted imaging agent designed to visualize prostate cancer currently in late stage clinical development ("PyL"), exceeds net sales thresholds of $100 million in 2022 and $150 million in 2023. As a result of the increase in the exchange ratio, following the completion of the merger, former Progenics stockholders' aggregate ownership stake will increase to approximately 40% of the combined company from approximately 35% under the terms set forth in the Original Agreement.

Mary Anne Heino, President and Chief Executive Officer of Lantheus, said, "After continued integration planning with Progenics and close collaboration with Progenics' reconstituted Board of Directors, we are even more excited about the potential value we can unlock by combining our two businesses. We remain confident that together, we will create a platform that leverages Lantheus' long-standing expertise in complex manufacturing, supply chain and commercial excellence, with Progenics' three leading FDA approved products, clinical pipeline and development capabilities. Our team enthusiastically shares the view of Progenics stockholders in the long-term growth potential of the Progenics product portfolio and, with our complementary strengths, our combined company will be better able to serve patients and healthcare professionals across the continuum of critical diagnosis and care. We are also pleased with the progress the two companies have made toward closing throughout our discussions."

Gérard Ber, Ph.D. and Mr. Heinz Mäusli, two members of Progenics' reconstituted Board, will join the Lantheus Board upon closing. Lantheus will reduce its current ten member Board to nine members at its 2020 stockholders meeting, or sooner if this transaction closes before then. Lantheus will further reduce its Board to eight members at its 2021 stockholders meeting. As previously announced, the combined company will be led by Lantheus Chief Executive Officer Mary Anne Heino, who will be supported by Chief Financial Officer Robert J. Marshall Jr., CFA, and Chief Operations Officer John Bolla.

Brian Markison, Chairman of the Board of Lantheus, said, "We are excited about the additions of Dr. Ber and Mr. Mäusli to our board. Both Dr. Ber and Mr. Mäusli add experience in radiopharmaceuticals with deep manufacturing, operating, finance and compliance experience."

Ann MacDougall, Interim Chair of Progenics' Board, said, "We have been pleased to work with Lantheus on the amended merger agreement. The Progenics' Board has unanimously determined that the combination with Lantheus under the updated terms is in the best interest of our stockholders. The merger creates a stronger combined platform that offers an innovative and diversified diagnostic and therapeutics portfolio while ensuring stockholders the opportunity to participate in the future potential upside through enhanced ownership and the CVRs. The reconstituted Progenics Board, assisted by independent financial and legal advisors, has evaluated the business prospects and operations of Progenics as a stand-alone business as well as the value of the Progenics interest in the combined company under the revised terms in the merger transaction, and have concluded that the combination is the better path forward. We are also pleased to have our directors, Dr. Gérard Ber and Mr. Heinz Mäusli, join the Board of the combined company to enhance its prospects for future success."

David Mims, Interim CEO of Progenics, added, "We believe the combination will add significant value to both companies' stockholders, especially in light of the recent positive results we achieved with our PyL Phase 3 CONDOR trial and our product pipeline and research and development capabilities."

**Lantheus' Strategic Plan for Progenics**

As previously announced on November 7, 2019, Lantheus provided a strategic plan that provides stockholders of both companies with a clear and thoughtful strategy in which Lantheus will leverage its existing infrastructure and long-standing expertise to deliver on the promise of Progenics' product portfolio and maximize value for all stockholders. The Lantheus team remains confident in the combination with Progenics as Lantheus has a clear track record of creating significant stockholder value, built on in-house operational excellence, commercial expertise, financial discipline and robust corporate governance.

In addition, through its extensive due diligence process and continued discussions with the Progenics Board, Lantheus has identified actions and investments in 2020 that will help enhance the progress of AZEDRA and the PyL and 1095 programs. Lantheus remains well-positioned to ensure that the Progenics portfolio has the benefit of access to cost-effective capital, manufacturing capabilities, logistical support and personnel resources to succeed.

With a focus on commercial, operational and clinical enhancements under the management of its proven team, Lantheus' strategic plan represents the highest value, most certain and expedient path forward to drive significant, long-term value for stockholders of both Progenics and Lantheus.

### Strong Financial Rationale

As a result of the recently reported positive top line results from the PyL Phase 3 CONDOR trial and ongoing integration planning, Lantheus believes this combination can generate double digit revenue growth, as well as drive margin expansion through the previously disclosed 2023 planning horizon. Accordingly, Lantheus continues to believe it can achieve adjusted EPS accretion in the third year following the close of the transaction.

### Additional Transaction Details

Lantheus has also agreed to make available to Progenics up to $10 million of bridge financing on terms mutually agreed upon by the parties. The merger transaction is expected to close early in the second quarter of 2020, subject to approval by Lantheus and Progenics stockholders and satisfaction of other customary closing conditions.

Upon completion of the acquisition, the combined company will continue to be headquartered in North Billerica, Massachusetts and will trade on the NASDAQ under the ticker symbol: LNTH.

### Advisors

SVB Leerink LLC is acting as financial advisor and White & Case LLP is acting as legal counsel to Lantheus. Progenics engaged BofA Securities, Inc. as financial advisor and previously engaged Jefferies LLC as existing lead financial advisor. Covington & Burling LLP and Mayer Brown LLP serve as independent legal advisors to Progenics.

**The Proxy Misleads Progenics Stockholders by Omitting Material Information**

26.     On March 16, 2020, the Company filed the materially misleading and incomplete Proxy with the SEC.  Designed to convince Progenics' stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning the financial projections of the Company and the financial analyses performed by the Company's financial advisor, BofA, underlying the fairness opinion relied upon by the Board.

***The Proxy Omits Material Facts Regarding the Company's Financial Projections***

27. The summary of the financial analyses conducted by the Company's financial advisor, BofA, states that the advisor reviewed "certain probability-weighted financial forecasts relating to Progenics prepared by the management of Progenics."

28. BofA also reviewed and used "certain financial forecasts relating to Lantheus Holdings prepared by the management of Progenics" in reviewing the value of Lantheus common stock that Progenics stockholders will receive in the Proposed Transaction.

29. Thus, the financial projections that formed the basis for BofA's valuation analyses were management's best estimates of the Company's future results, and did not originate from some other source.

30. The Proxy discloses Progenics' projected non-GAAP financial metrics (i) Total Adjusted Net Revenue, (ii) EBIT; and (iii) Unlevered Free Cash Flow for the years 2020 through 2033. But in disclosing these select, non-standardized metrics, the Registration Statement materially misleads stockholders by failing to reconcile all projected non-GAAP financial metrics to GAAP financial metrics for the years 2020 through 2033, and by omitting key GAAP financial metrics from which these non-GAAP metrics were derived.

31. The Proxy similarly fails to reconcile the disclosed non-GAAP financial projections for Lantheus for the years 2020 through 2024, including (1) EBIT and (2) Unlevered Free Cash Flow, and also fails to disclose the projected line items used to calculate these metrics.

32. Further, Progenics stockholders will receive Lantheus stock as Merger Consideration, and thus must know the actual value of that stock in order to evaluate the Proposed Transaction. But the Proxy fails to disclose the standard financial measures used by publicly reporting companies that would permit stockholders to actually evaluate the value of the Merger Consideration.

33. The above-referenced omitted information relating to the financial projections of the parties to the Proposed Transaction significantly altered the total mix of information available to Progenics' stockholders regarding the future value of the Company.

34. Thus, the omission of this projected financial information serves to prevent Company stockholders from evaluating the fairness analysis conducted by BofA, or to perform their own valuation of the Company.

*Material Omissions Concerning the Financial Analyses Underlying BofA's Fairness Opinion*

35. The Proxy describes the financial analyses performed by BofA that formed the basis for the fairness opinion that the Board relied upon in approving the Proposed Transaction. However, the description of these analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Progenics' stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on the fairness opinion of BofA in determining how to cast their vote on the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Progenics stockholders.

36. With respect to BofA's *Discounted Cash Flow Analysis* for Progenics, the Proxy fails to disclose: (i) the calculated range of terminal values, (ii) the inputs and assumptions underlying the selection of the perpetuity growth rate range, (iii) whether BofA used the cost of equity or the weighted average cost of capital in its analysis, (iv) any of the inputs used in calculating the Company's discount rate range, (v) the value of the net operating losses, and (iv) the number of fully diluted shares of Progenics stock outstanding

37. With respect to BofA's *Discounted Cash Flow Analysis* for Lantheus, the Proxy fails to disclose: (i) the calculated range of terminal values, (ii) the inputs and assumptions

underlying the selection of the perpetuity growth rate range, (iii) whether BofA used the cost of equity or the weighted average cost of capital in its analysis, (iv) any of the inputs used in calculating the Company's discount rate range, (v) the value of the net operating losses, and (iv) the number of fully diluted shares of Lantheus stock outstanding.

38. The failure to provide these material inputs and assumptions of BofA's financial analyses that support its fairness opinion materially misleads Progenics stockholders as to the reasonability and reliability of the fairness opinion and the fairness of the Merger Consideration.

39. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Progenics**

40. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

41. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Progenics is liable as the issuer of these statements.

42. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

43. The Individual Defendants possessed the true and correct facts that are alleged to have been omitted, and thus acted, at minimum, negligently in filing the Proxy with these materially false and misleading statements and omissions.

44. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

45. The Proxy is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

46. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

47. Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

48. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

49. The Individual Defendants acted as controlling persons of Progenics within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Progenics and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision

making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

50. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

51. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein and exercised the same. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy.

52. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated:  April 8, 2020

**LEVI & KORSINSKY, LLP**
Donald J. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (212) 363-7171
Email: denright@zlk.com
       etripodi@zlk.com

*Attorneys for Plaintiff*

Respectfully submitted,

By:  /s/ *Adam M. Apton*
Adam M. Apton (AS8383)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4859
Fax: (212) 363-7171
Email: aapton@zlk.com

*Attorneys for Plaintiff*